115 So.2d 93 (1959)
Anthony SCIORTINO, Appellant,
v.
STATE of Florida, Appellee.
No. 846.
District Court of Appeal of Florida. Second District.
October 14, 1959.
Rehearing Denied November 3, 1959.
*94 Howard Garrett, Garrett & Garrett, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., Edward S. Jaffry and Eugene P. Spellman, Asst. Attys. Gen., for appellee.
ALLEN, Chief Judge.
The appellant was tried on an information charging him with aiding and assisting in the setting up, promotion and conducting of a lottery, with possession of bolita paraphernalia and with possession of bolita tickets. The jury found the appellant-defendant guilty under the first, second and third counts of the information, but a mistrial was declared as to the fourth count. He was adjudicated guilty and sentenced to serve three years in the state prison on the first count of the information.
The appellant in this case was convicted on counts 1, 2 and 3 of the information but was only sentenced on count 1 of the information which charged that he unlawfully aided and assisted in the setting up, promoting, and conducting of a lottery for money, or that appellant was unlawfully interested in and connected with said lottery in that the appellant engaged in the business of selling shares and interest in said lottery.
The testimony offered by the State was basically as follows:
A deputy sheriff entered the place of business owned by the appellant, accompanied by another deputy. A search of the premises disclosed that behind the bar there was a telephone with pencils and pads on the shelf and near this shelf was a match box containing a white slip with numbers on it. At the time these items were found, the appellant admitted that the numbers on the white sheet in the box were lottery numbers and that the box and ticket contained in the box belonged to him. Another deputy sheriff testified as an expert that the ticket contained in the box was a lottery ticket.
The above evidence constituted all of the proof offered in the case with the exception of certain admissions made by the appellant when the two deputies, with the defendant, encountered the Sheriff of Hillsborough County at the foot of the stairs on their way to the sheriff's office. The deputies informed the sheriff, in the presence of appellant, that they had made a case against appellant for conducting a lottery and for possession of bolita, whereupon Sheriff Blackburn stated to the appellant, "Tony, I thought you had gone out of the blooming bolita business." The appellant retorted, "Well, I've only been back in business a couple of weeks." Shortly thereafter, appellant informed the deputies that he would confess to possession but would not confess to conducting a lottery. One of the deputies further testified that, "Mr. Sciortino stated that he already had one conviction on lottery law violation against him and, therefore, that he would not give a statement on conducting."
The appellant states the following points:
1. There was a total absence of proof of the corpus delecti of the offense of aiding and assisting in the setting up, promoting and conducting of a lottery, by selling shares therein, as denounced by section 849.09(1) (d).
2. The defendant, while being held in custody in violation of section 901.23, *95 was forced to give evidence, and the alleged admissions against interest made by the defendant are therefore not admissible.
3. The defendant was entitled to a mistrial following the propounding of this question to a state's witness by assistant County Solicitor William C. McLean: "Have you had occasion to ever place him under arrest for bolita before?", notwithstanding that the judge sustained the defendant's objection to such question and instructed the jury to disregard the same.
Since we shall rule against the appellant on the last two questions, we do not deem it necessary to discuss them. We must sustain the appellant, however, as to Point 1 on the basis of a complete absence of any proof of the corpus delicti.
In criminal prosecutions the corpus delicti, or the fact that a crime has been committed, is an important element in every prosecution. This term, as applied to any particular offense, means that the state must establish that the specific crime charged has actually been committed. The corpus delicti is made up of two elements: (1) that a crime has been committed, as for example, a man has been killed or a building has been burned; and (2) that some person is criminally responsible for the act. It is not sufficient merely to prove the fact that the person died or the building burned, but there must be proof of criminal agency of another as the cause thereof. 9 Fla.Jur., Criminal Law, § 3, Meaning of Corpus Delicti.
It has been contended that confessions of a person accused of a crime are evidence of the highest character, on the theory that no person will acknowledge that he has committed a grave crime unless he is actually guilty, and that a person will not make an untrue statement against his own interest. However, the courts have repudiated this theory, recognizing that persons have confessed to crimes which they did not commit, in the hope of averting punishment. Consequently, it is now the great weight of authority that confessions of parties charged with crime should be acted on by courts and juries with great caution, especially where the party is under arrest when the confession is made. Indeed, an extrajudicial confession of guilt, standing alone, will not authorize a conviction on a criminal charge, even though believed by the jury. 13 Fla. Jur., Evidence, § 423.
The text-book writers and the decisions of the various jurisdictions reflect considerable differences relative to the proof of corpus delicti, the necessity of proving it beyond a reasonable doubt, and whether admissions or confessions may be received as an aid in establishing the corpus delicti.
Wharton's Criminal Evidence, 12th Ed., Anderson, Vol. 1, sec. 17, page 48, states:
"The corpus delicti of a crime is the body or the substance of the crime charged. It involves two elements: (1) injury to a specific person, property, or right, or a violation of a statute; and (2) criminal agency of someone in producing that injury or violation. Proof of the defendant's connection with the crime as the operative agent, although essential for conviction, is not part of the corpus delicti.
"In all criminal prosecutions, the burden is on the prosecution to prove the corpus delicti. In some jurisdictions it is held that proof of the commission of a crime must be shown before a confession will be received.
"Logically the corpus delicti should be first established before proof is offered showing the defendant's part *96 in the commission of the offense. As a practical matter, evidence of the corpus delicti and of the defendant's participation are often so intertwined that evidence on both issues is admitted at the same time. Hence, the order of proof in a criminal case is generally within the discretion of the trial court. The error in admitting testimony as to the guilt, before the proof of the corpus delicti, is cured when the subsequent testimony sufficiently establishes the corpus delicti."
See the case of Holland v. State, 39 Fla. 178, 22 So. 298.
Underhill's Criminal Evidence, 5th Ed., Herrick, Vol. 1, chapter 4, § 35, page 46, gives an excellent discussion of the principles of corpus delicti. Beginning on page 47, it is stated:
"It is sometimes said that corpus delicti also includes the criminal agency of the accused, but this makes the corpus delicti the same as the whole of the charge, and it is more accurate to say that it includes only the end result and the criminal agency of some one but not of any particular person.
* * * * * *
"§ 36. Proof of corpus delicti by confessions and admissions.  An extra judicial confession or admission of the accused is not sufficient standing alone, to prove the corpus delicti. Such a confession or admission may be considered with other testimony, however, and in most jurisdictions the corpus delicti is established when the other testimony, together with the confession, proves the corpus delicti beyond a reasonable doubt. The other evidence need not, independent of the confession, establish the corpus delicti beyond a reasonable doubt. In other words, a confession or admission must be corroborated, and the corroboration which is required must refer not merely to facts supporting the confession but to facts concerning the corpus delicti. Mere corroboration of the fact of confession in insufficient.
"The evidence required to establish the corpus delicti, in addition to that furnished by the confession, need not be wholly independent of the confession, and it need not connect the defendant with the crime. Where the evidence is sufficient to show that the crime has been committed, or where there is any evidence dehors the confession in proof of the corpus delicti, the confession or admission is generally admissible. It has been held that slighter evidence is needed to establish the corpus delicti when a confession is present.
* * * * * *
"§ 37. Circumstantial evidence to prove corpus delicti  In general  In homicide cases.  The corpus delicti may generally be proved by circumstantial evidence, as long as such evidence measures up to the standards already discussed. Such proof must be the most convincing and satisfactory proof that is compatible with the nature of the case, but each particular circumstance need not be conclusive in itself.
* * * * * *
"§ 38. Order of proof.  Proof of the corpus delicti beyond a reasonable doubt is not required before evidence may be admitted to connect the defendant with the crime * * *."
Wharton's Criminal Law and Procedure, Vol. 1, Anderson, § 66, at page 144, states:
"The proof of the corpus delicti does not include proof as to the identity of the wrongdoer, nor proof that the defendant was the wrongdoer. Some cases, however, define corpus delicti *97 so as to require proof of the defendant's criminal agency in producing the harm. This is unsound, and the correct rule is that proof of the corpus delicti does not include proof of the identity of the defendant as the perpetrator of the crime."
McCormick, in his handbook of the Law of Evidence, (1954) at page 229, in discussing the safeguards in accepting confessions, says:
"The English courts and text writers have warned that, in homicide cases, it is dangerous to convict upon a confession alone without some additional evidence such as the finding of the body, and in such cases, and perhaps in bigamy and larceny cases, the judges may well require some independent confirming evidence or caution the jury against accepting the confession too lightly. This rather flexible practice has, in most American courts, hardened into a rigid rule based upon the premise that confessions generally are an unreliable class of evidence. This premise, as suggested above, seems to be quite unfounded, and the cases applying the rule give for the most part the impression of measuring the proof according to a mechanical yardstick, rather than by a standard aimed at preventing the conviction of the innocent.
"The most widely prevailing form of the American rule is that in a prosecution for any crime where the state relies on a confession, it must also produce evidence independent of the confession tending to establish the corpus delicti, that is, the fact that the crime charged has been committed.
"Conceivably this doctrine might involve some or all of three elements: first, the harm or injury embraced in the particular crime, such as the death in a murder case or the loss of property in a larceny charge; second, the criminal origin of the harm or injury; and third, the criminal participation of the accused himself. Most courts hold that the requirement embraces the first two elements only. Of these the second, the production of evidence tending to show that the death, loss or injury was due to a crime, causes the most difficulty * * *."
It was held in Harris v. State, 72 Fla. 128, 72 So. 520, that there must be some substantial evidence of the corpus delicti other than the confession itself to authorize conviction.
In the recent case of Alexander v. State, Fla.App. 1958, 107 So.2d 261, 263, this court, speaking through Judge Kanner, reversed the conviction of one of three defendants who had been convicted for violation of the lottery laws.
The defendant, Alexander, was the owner and living on the premises which had been searched by the officers looking for contraband whiskey. The officers, on making a search of the premises, found a quantity of lottery paraphernalia and, in addition, certain lottery tickets on the persons of the other two defendants. The lottery paraphernalia seized in the home consisted of lottery tickets, records, an adding machine and other paraphernalia evidencing lottery operations. The trial court suppressed the evidence seized in the home of Alexander on his motion insofar as it affected him.
An officer testified that Alexander admitted that he was in the bolita business. Alexander objected to the admission because there was no other evidence in the case except his own admission. The trial judge permitted the jury to consider the charges against Alexander of conspiracy to set up and conduct a lottery, etc. This court, in its opinion, said:
"Guilt cannot be founded upon a naked extra-judicial confession or admission unsupported by proof of the *98 corpus delicti of the crime. See Tucker v. State, 1912, 64 Fla. 518, 59 So. 941; Parrish v. State, 1925, 90 Fla. 25, 105 So. 130; and Smith v. State, 1927, 93 Fla. 238, 112 So. 70. There was no independent proof of the corpus delicti. The judgment concerning the appellant Alexander must therefore be reversed and set aside."
In Adams v. State, 1943, 153 Fla. 68, 13 So.2d 610, 611, the facts, as stated in the Court's opinion, were as follows:
Two deputy sheriffs entered the defendant's place of business to arrest him on a certain "Bolita" warrant, from which charge he was later dismissed. While there, the deputies observed the defendant talking over the telephone, a lady standing beside him, and a piece of paper in his hand. One of the deputies heard the defendant calling numbers over the phone. The other deputy could not hear what defendant said. The deputies thereupon arrested him for the sale and possession of bolita. The paper which they took from his hand had numbers written on it. The paper had been signed by the lady in defendant's presence and was introduced into evidence. The lady did not testify at the trial.
On the trial officers were permitted to testify that the lady referred to in the above paragraph had stated in their presence and in the presence of the defendant that she had bought certain numbers, which appeared in her handwriting on the slip of paper, from the accused and that those numbers represented numbers in a lottery known as parlay. Aside from her statement there was no legal evidence that the accused had sold any share or right in a lottery drawing. Since the lady did not testify, the testimony of the officers could only be considered as an admission of the truth of this statement made in the presence of accused by the lady, and which he did not then deny.
The Court, in its opinion, stated:
"It is elementary that before a confession or admission of guilt may be introduced in evidence the State must first prove the corpus delicti, that is, it must prove that the crime charged had been committed. See 20 Am.Juris. pg. 422, Sec. 484, and cases there cited. The record fails to establish this fact and, therefore, we find no legal evidence in the record supporting conviction."
In the case of Rowe v. State, Fla. 1955, 84 So.2d 709, the Florida Supreme Court, on rehearing, reversed the conviction of the appellant on the third count of an information which charged that the appellant "did unlawfully set up, promote and conduct a certain lottery and lotteries for money."
The State sought to prove the corpus delicti by proving that the defendant had paid a tax to the Federal Government for wagering. A deputy sheriff testified that he was familiar with Cuba and Bolita lottery and described the method by which one played them. The Court, in its opinion, said:
"Section 3285 et seq., 26 U.S.C.A. levies a tax on each person who is engaged in receiving wagers. In Florida this applies to bookmaking and lotteries for profit. The defendant is specifically charged with a violation concerning a lottery. Nothing in the testimony of the predicating witnesses points to a violation of the lottery section under which the defendant was charged, but the most that can be said or inferred from the testimony is that the defendant must have been engaged in some form of wageriny in view of the fact that the tax was paid. To establish a prima facie showing sufficient for the corpus delicti, it would be unreasonable to attempt to show that some form of crime was committed *99 and then attempt to infer that since some form of crime took place, the specific crime charged was also committed.
* * * * * *
"In this case, the crime charged was a violation of the lottery laws of Florida. From the evidence introduced prior to the alleged confession, there could just as easily be inferred a violation of the bookmaking laws. The payment of the tax by the defendant does not establish, even prima facie, the operation of a lottery. This, coupled with the absence of any direct testimony that there had even been lottery operations in Orange County, makes the State's case fall short of establishing the corpus delicti, a prerequisite to the admission of the alleged confession of the defendant."
In the case now before this court the only evidence that was introduced, outside of the admissions of the defendant, was the possession in the place of business of the defendant of a bolita ticket which was found in a match box in the defendant's bar, and behind the bar was a telephone with pencils and pads beside it on the shelf. It could be logically contended by the State that this evidence would establish the corpus delicti of possession of lottery tickets, and bolita paraphernalia but could not be construed to establish the corpus delicti of "aiding and assisting in the setting up, promoting, and conducting of a lottery by selling shares therein." Direct evidence of one offense may not be used as proof of corpus delicti of another crime.
We conclude that the following principles of corpus delicti have been established by the decisions of the Florida Supreme Court:
1. It must be shown that the specific crime charged has been committed. Adams v. State, 153 Fla. 68, 13 So.2d 610.
2. It is not necessary that the corpus delicti be proved beyond a reasonable doubt in order to introduce a confession or admission. Lambright v. State, 34 Fla. 564, 16 So. 582; McElveen v. State, Fla. 1954, 72 So.2d 785.
3. The confession should not be received in evidence unless there is some prima facie proof of the crime charged. Smith v. State, 93 Fla. 238, 112 So. 70; McElveen v. State, Fla. 1954, 72 So.2d 785.
4. The specific crime charged must be prima facie established and it cannot be inferred that because some crime was committed that the specific crime involved in the prosecution took place. Rowe v. State, Fla. 1955, 84 So.2d 709.
5. When the corpus delicti has been prima facie proved by either positive or substantial evidence, the confessions of the defendant are admissible and may be considered and weighed together. Groover v. State, 82 Fla. 427, 90 So. 473, 26 A.L.R. 373; Holland v. State, 39 Fla. 178, 22 So. 298.
This case is reversed for a new trial.
KANNER and SHANNON, JJ., concur.

On Petition for Rehearing
PER CURIAM.
The State has filed a petition for rehearing in this cause on the ground that the opinion apparently reversed the lower court for a new trial on all three counts, whereas the appellant was convicted on three counts of an information which charged him with aiding and assisting in the setting up, promoting and conducting of a lottery, with possession of bolita paraphernalia and with possession of bolita tickets, only one of which counts, to wit: the first count, which charged the appellant with aiding and assisting *100 in the setting up, promoting and conducting of a lottery, was before this court.
This court, in its opinion, held that the corpus delicti had been prima facie proved as to the crime charged in the second and third counts, but not as to the first count.
We believe that the opinion sufficiently sets forth that the court was considering only the first count of the information and, therefore, that the case was reversed for a new trial as to the first count alone. The second and third counts, being misdemeanors, were not appealed to this court as, in fact, they could not be since this court would have no jurisdiction.
Petition for rehearing is denied.
ALLEN, C.J., and KANNER and SHANNON, JJ., concur.